## WILLIAM CARNOE *vs.* INHABITANTS OF FREETOWN.

An inhabitant of P., being out of health, gave up business there and removed to F. with the intention of remaining there through the summer, and returning to P. in the autumn to reside and do business there. The next autumn his health was restored, but, not finding satisfactory business in P., he remained in F. until the following March, when he entered into business elsewhere, and intended as soon as he could make arrangements, to remove to C. to reside, and made a contract for the removal of his furniture to C. as soon as possible, and on the first of May put it on board a vessel, and a few days after personally removed to C. *Held,* that he was rightly taxed in F. on said first of May.

ACTION OF CONTRACT to recover back a tax assessed by the defendants upon the plaintiff's poll and personal estate for the year 1855. Trial in the court of common pleas before *Mellen,* C. J., who allowed the following bill of exceptions :

The only question upon which the parties were at issue was, whether the plaintiff was an inhabitant of Freetown on the first day of May 1855; and for the purposes of the trial it was admitted that if at any time subsequent to 1853 the plaintiff had acquired a domicil in Freetown, he had his domicil there on said first day of May.

The plaintiff offered evidence tending to prove the following facts : He was a native of the defendant town, where he resided with his parents until the fall of 1843, when he removed to

Providence, and there continued to reside until the 6th or 7th of April 1854. In the fall of 1844 the plaintiff's father and mother removed from Freetown to Providence, where they both continued to reside until the death of his father, and his mother afterwards, until August 1854, when she gave up her house, and removed with all her furniture to Freetown to attend on a sick sister. Some time prior to 1854 the plaintiff had married the daughter of a resident of Freetown; but boarded in the family of his father both before and after his marriage and until April 1854, when, on account of the condition of his health, which had been gradually failing for two years, he gave up his business in Providence, and with his wife removed to Freetown, carrying with him his furniture, consisting of a few articles which, for his better accommodation, he had used while boarding with his mother.

The plaintiff himself testified that when he removed to Freetown, he did it with the intent of remaining there through the warm weather, and of returning to Providence as early as the September following, to do such business in Providence as he could find to do, and reside there. He remained with his wife in Freetown until September 1854, when, his health being sufficiently restored, he attempted to get into business in Providence, and for that purpose went there several times during the subsequent fall and winter, but did not succeed in finding business agreeable to him before the 27th of March 1855, up to which time, except when temporarily absent, he continued to reside with his wife in Freetown. On the 27th of March 1855 the plaintiff went to Providence and bought the interest in a cotton manufactory in Uxbridge in this state, and on the 2d of April 1855 entered into a partnership, under which he had since carried on the factory. About the middle of April 1855 he hired a house in Cumberland, R. I., and made a contract for the carriage from Freetown to Providence, as soon as possible, of his furniture and his mother's, which were put on board a vessel and carried out of the river on the first day of May, the earliest day upon which the goods could be conveniently put on board the vessel on account of the state of the tides; and a few days

afterwards, the plaintiff's wife went to Cumberland, and the
plaintiff and his family had since occupied said house. From
the 27th of March 1855 to the 1st of May 1855 the plaintiff was
a part of the time in Providence, a part of the time in Uxbridge,
and a part of the time in Freetown, and on said first day of
May was in Freetown. The plaintiff also testified that at the
time of entering into his present business, on the 27th of March
1855, he intended, as soon as he could make arrangements, to
remove his family to Cumberland, and reside there. It was also
shown by the plaintiff, that for the year 1854 he was taxed in
Providence, but did not pay that tax until June 1855, after the
defendants had assessed him for the year 1855 in Freetown;
and that in August 1855 he was assessed as a resident of Cum-
berland.

The defendants requested the court to instruct the jury as
follows :

" 1st. That if they should believe that, when the plaintiff left
Providence in April 1854, he left with an intent to return to
Providence upon the restoration of his health, or in the event of
his being able to form a business connection satisfactory to him-
self, or other uncertain contingency; and that during this time
he had no house, tenement or place of business in Providence;
this would not be such an intent to return as would prevent his
acquiring a domicil in Freetown.

" 2d. That if upon the evidence the jury shall be satisfied
that on the 2d of April 1855, in forming his connection in busi-
ness in which he is now engaged, and from that time, the plain-
tiff intended to take up his residence in Cumberland, R. I., this
abandonment of his intention to return with his family from
Freetown and resume his residence in Providence would fix his
domicil in Freetown until such time as he did acquire a domicil
in Cumberland."

These instructions the court declined to give; but offered to
instruct the jury that if they should believe the testimony of the
plaintiff, he would be entitled to a verdict. Whereupon a ver-
dict was taken for the plaintiff, and the defendants alleged
exceptions.

*B. Sanford,* for the defendants.

*C. I. Reed,* for the plaintiff. The first instruction prayed for was properly refused, because there was no evidence to which it was applicable. *Drake* v. *Curtis,* 1 Cush. 395. The fact that the plaintiff did not return to Providence as soon as he first intended does not affect the case. *Sears* v. *Boston,* 1 Met. 250. *Fitchburg* v. *Winchendon,* 4 Cush. 190.

The second instruction prayed for was also rightly refused. The plaintiff did not lose his residence in Providence until he gained one somewhere else; and supposing he still had one in Providence, (which is the hypothesis on which the second request is based,) the mere determination to go to Cumberland would not give him a domicil in Freetown, but he would retain his domicil in Providence until he actually acquired one in Cumberland. *Bulkley* v. *Williamstown,* 3 Gray, 493.

The instruction which the court proposed to give was correct. The plaintiff never lost his domicil until his actual removal to Cumberland.

SHAW, C. J. On the 1st of May 1855, when this tax was assessed, the plaintiff had ceased to be domiciled in Providence, because he had in fact quitted it, and, as early certainly as March, abandoned his intention to return to it. He had not acquired a domicil in Uxbridge or Cumberland, because he had not removed there, nor exercised any right of citizenship there; he had only an intention of removing. He was actually in person in Freetown on the 1st of May, and had no domicil for taxation elsewhere. He was therefore taxable in Freetown. See *Holmes* v. *Greene,* 7 Gray, 299; *Bulkley* v. *Williamstown,* 3 Gray, 493; *Kilburn* v. *Bennett,* 3 Met. 199.

*Exceptions sustained.*